**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GALEN L. BROWN, ) | |
| ) | CASE NO. 1:08-CV-2049 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE ANN ALDRICH |
| ) | |
| MICHAEL J. ASTRUE, ) | MAGISTRATE JUDGE GREG WHITE |
| Commissioner of Social Security ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff Galen Brown ("Brown") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Brown's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") relief under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

For the reasons set forth below, the Magistrate Judge recommends that the final decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this Report and Recommendation.

## I. Procedural History

On October 18, 2002, Brown filed an application for POD, DIB, and SSI alleging a disability onset date of October 5, 2002 and claiming that he was disabled due to a severe brain injury, degenerative lumbar disc/joint disease, depression, memory loss, and borderline intellectual functioning. His application was denied both initially and upon reconsideration. Brown timely requested an administrative hearing.

On November 16, 2005, a hearing was held before Administrative Law Judge Thomas Ciccolini ("ALJ"). (Tr. 58-63.) The ALJ found that Brown was not disabled. (Tr. 63.) Brown filed an appeal with the Appeals Council, which remanded the matter for further proceedings. (Tr. 65-67.)

On October 26, 2006, the ALJ held a supplemental hearing during which Brown, represented by counsel, testified. Richard Watts, M.D., testified as a medical expert ("ME"). Brett Salkin testified as the vocational expert ("VE"). On November 21, 2006, the ALJ found Brown was disabled due to his impairments and was entitled to a closed period of disability starting from October 5, 2002 and ending October 6, 2003. (Tr. 12-24.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On appeal, Brown claims the ALJ erred by: (1) improperly finding, without the support of substantial evidence, that medical improvement occurred; and, (2) improperly analyzing the opinion of both the treating physician and the ME.

## II. Evidence

*Personal and Vocational Evidence*

Born on June 3, 1967 and age thirty-nine (39) at the time of his administrative hearing,

2

Brown is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Brown has at least a high school education and past relevant work as a house painter, aluminum siding worker, roofer, and greenhouse worker. (Tr. 22.)

*Medical Evidence*

On October 6, 2002, Brown was found to have a left frontal lobe hematoma caused by a direct blow to his head. (Tr. 276.) He underwent an emergency craniotomy. The surgery was done by Ghassan Khayyat, M.D. Dr. Khayyat removed some of Brown's frontal lobe brain tissue damaged by the trauma. *Id.*

On October 16, 2002, Brown was admitted to Community Health Partners for rehabilitation. (Tr. 217.) Rafik Massouh-Khabaz, M.D., examined Brown and reported that he suffered from head trauma and contusion, left frontal area hemorrhage, tobacco addiction, alcohol abuse, illegal drug use in the form of marijuana, and post trauma seizures. (Tr. 232.)

Also on October 16, 2002, Brown was examined by Heather Scullin, D.O. Dr. Scullin noted that he suffered from significant functional impairment which included decreased mobility and inability to perform activities of daily living. (Tr. 233.)

On October 19, 2002, Brown was examined by R. Dion Fernando, M.D. Dr. Fernando determined that he was alert and conscious, that there was no evidence of any movement defects, and no definite pathological reflexes were identified. He also noted that it would be best to take Brown off of the medication Dilantin. (Tr. 223.) Brown was also examined by Mario Sertich, M.D. Dr. Sertich noted that he was able to follow commands well, had good balance and demonstrated good coordination. (Tr. 230.)

On October 22, 2002, Brown was discharged from the rehabilitation center. (Tr. 217.)

The discharge report indicated that Brown was independent in his daily living activities, but he still needed some cuing for higher-level cognition. *Id.*

On October 28, 2002, Brown underwent a follow-up examination by Dr. Khayyat. (Tr. 275.) The report indicated that Brown was having speech and memory problems and that he needed to be told to brush his teeth, eat, and take his medication. *Id*. Brown reported that he had not suffered from a seizure since being in the hospital. *Id*.

On November 19, 2002, Dr. Khayyat performed another check-up examination. (Tr. 274.) He noted that Brown still had some memory problems, but that his memory problems were much improved. *Id*. The doctor also noted Brown complained of headaches and dizziness. *Id*.

A December 3, 2002, speech and language report indicated that Brown could read multi-paragraph materials and follow lengthy directions, but that he had a mild receptive and expressive aphasia, decreased comprehension of written materials, and decreased word retrieval. (Tr. 229.)

On December 6, 2002, Dr. Scullin performed another examination of Brown. (Tr. 292.) She determined that Brown's physical testings were grossly within the normal range. *Id*. She also conducted several memory tests that Brown completed successfully. *Id*.

On January 28, 2003, at the request of the State Agency, Brown was evaluated by Richard N. Davis, a clinical psychologist. (Tr. 237-43.) Dr. Davis reported that Brown's conversation flow and thought was satisfactory and that he did not demonstrate fragmentation of thoughts or flight ideas. (Tr. 239.) He also noted that Brown spoke coherently and was relevant and organized in his topics. *Id*. Dr. Davis noted that Brown had some limitations in his abilities to think logically and in his use of common sense and judgment. (Tr. 240.) After testing, Dr.

Davis reported that Brown had no difficulty with the mental control category of the test. (Tr. 241.) Brown did have some difficulty in remembering items in a story in that he only identified 5 of 25 easier items to remember and only 2 of 25 more difficult items to remember. *Id*. Dr. Davis also noted that Brown does not benefit from having information repeated to him. *Id*. The test revealed that Brown could pronounce words at a 7.5 grade level. *Id.* Dr. Davis concluded that Brown was oriented as to person, place, time, and situation. He showed an appropriate mood and effect. Intellectually, he scored towards the upper end of the borderline range. Dr. Davis also concluded that Brown was somewhat limited in his daily activities, although he did not demonstrate a difficulty with physical problems. Finally, he concluded that Brown had some personal and social adjustment problems and assessed Brown with a GAF of 65. (Tr. 242-43.)

On February 24, 2003, Kristen E. Haskins, Psy.D, reviewed the evidence in the record and concluded that Brown's impairments were not severe. (Tr. 245-57.) She based that determination on the listings of 12.02 and 12.05. *Id*. She did note that Brown had behavioral abnormalities associated with a dysfunction of the brain as evidenced by Brown's mild memory impairment. (Tr. 246.)

On March 27, 2003, Augusto L. Pangalangan, M.D., completed a Physical RFC Assessment and opined that Brown suffered from no exertional limitations. (Tr. 258-62.)

On May 20, 2003, the Nord Center diagnosed Brown as suffering from mood disorder due to his closed head trauma, alcohol dependence, and marijuana dependence. (Tr. 343-44.) The Center concluded that he demonstrated a personality disorder, not otherwise specified, with anti-social traits. *Id*. Brown also demonstrated psychological and environmental problems in the form of anger, occupational, and economic problems. *Id*. His GAF assessment was a 55. *Id*.

On June 17, 2003, Brown followed-up with Dr. Khayyat. Dr. Khayyat noted that Brown still showed memory loss, emotional liability, and was easily angered. (Tr. 272.) He also reported that Brown became exhausted easily. *Id.*

On July 15, 2003, Dr. Khayyat completed a questionnaire for the Bureau of Disability Determination in which he diagnosed Brown with traumatic brain injury, traumatic intracranial hemorrhage, concussion, memory loss, and a speech impediment. (Tr. 269-71.) He also noted that Brown was unable to concentrate and remember simple commands or tasks, and that he demonstrated emotional outbursts. *Id.* Dr. Khayyat concluded that Brown required close supervision with repetitive tasks. *Id.*

On July 24, 2003, Brown's medical record was reviewed by State Agency psychologist, Michael D. Wagner, Ph.D. (Tr. 307-10.) Dr. Wagner determined that Brown could retain, understand and follow simple directions and instructions. (Tr. 307.) He also opined that Brown was moderately limited in the following areas: his ability to understand, remember, and carry out detailed instructions; his ability to maintain concentration and attention for extended periods; his ability to complete a normal work week without interruption due to psychologically based symptoms; and his ability to respond appropriately to changes in the work setting. (Tr. 307-08.) He did state, however, that Brown would be able to carry out tasks in a low stress situation. (Tr. 309.)

On August 11, 2003, Mike Flis, a Certified Driver Rehabilitation Specialist, reported that Brown demonstrated the ability to safely and independently operate a motor vehicle on public roadways. (Tr. 267.)

On August 13, 2003, E.S. Villanueva, M.D., a State Agency physician, reviewed

6

Brown's medical record.  (Tr. 311-16.)  He reported that Brown could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk for about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and that he had no limitations on his ability to push and/or pull.  He further noted that Brown should never climb ladders or ropes but that he had no other significant functional limitations.  (Tr. 313.)

On March 11, 2004, the Nord Center discharged Brown and closed his case due to non-compliance and substance abuse.  (Tr. 358.)

*Hearing Testimony*

At the hearing, Brown testified that although he could walk a couple of blocks, he experienced pain in his back, legs, and arms while walking.  (Tr. 421.)  He can only stand and sit for a couple of minutes.  (Tr. 421-22.)  He did not go out for amusement, such as movies or sporting events, because of pain.  (Tr. 425.)  He further stated that, in carrying a weight over a short distance, he could only lift about twenty pounds.  (Tr. 422.)  Brown also testified that he did not have a driver's license.  *Id.*

When asked by the ALJ about the date of his injury, Brown stated that he could not remember the date or year.  *Id.*  He testified that he could not recall any details about the incident at all.  *Id.*  Furthermore, Brown stated that he could not remember the events of the beginning of the month.  *Id.*  Brown stated that he could remember past events better than he could more recent events.  *Id.*

In describing a typical day, Brown testified that in the morning he gets his son ready for school.  (Tr. 424.)  Afterwards, Brown helps his mother around the house.  *Id.*  He stated that he must have his mother write down his daily tasks or else he will forget them.  (Tr. 425.)  The

7

chores he performs to help his mother include shoveling the snow and cutting the grass. *Id.* He further testified that his mother must watch him carefully and correct him while he performs his chores. (Tr. 429.) The rest of Brown's day consists of watching television or drawing. *Id.*

Brown testified that the pain he experiences is sometimes maintained with the medication Naproxen. (Tr. 426.) However, he also stated that the medicine does not always curb the pain; when it does not, the pain is so severe that it "puts him on his knees." *Id.* He also stated that he takes Duradrin for his headaches. (Tr. 427.) Brown testified that he has experienced seizures in the past and that doctors prescribed Gabapentin in order to prevent them. *Id.*

The ME testified that the injury sustained by Brown improved progressively since the date of the injury. (Tr. 436.) He stated that the area of the brain that had been partially removed, the frontal lobe, is responsible for the higher level functions, memory, and ability to evaluate situations. (Tr. 437.) The ME commented that it was unclear how much functional ability Brown lost due to the hematoma because there was no measurement of his GAF or IQ prior to the accident. *Id*.

When questioned by Brown's counsel, the ME stated that the memory loss, need for close supervision on even repetitive tasks, and continued potential for seizures were all indicated in the medical records. The ME further affirmed that all of the records regarding those symptoms were consistent with the available medical evidence. (Tr. 437-39.)

The ALJ asked the VE to consider a hypothetical individual with the following RFC limitations: Brown's age and education; a light residual functional capacity with no exertional limitations; the exclusion of complex tasks; low stress work; no high production pace, or high production quotas; no unprotected heights; and, no postural or manipulation limitations. (Tr.

442.)

In response, the VE stated that an individual reflecting those traits would not be able to perform Brown's past relevant work. *Id.* However, the VE stated that there were jobs that an individual with those specific limitations and abilities would be able to perform. He stated that such jobs include a housekeeper, mail clerk, and fast food worker. *Id.*

The VE testified that those jobs required non-complex tasks–within a one or two step sequence. (Tr. 443.) He testified that the proposed jobs were only for unskilled, entry-level work and demonstrated ordinary levels of supervision. *Id.* The VE also stated that the jobs would require simple memorization and an ability to maintain concentration. (Tr. 445.) He commented that an inability to maintain concentration for ten percent of the time would cause one to be unable to remain competitively employed. *Id.* He also stated that the identified jobs included the requirement to move. *Id.* As for the fast food worker and housekeeper positions, the VE testified that there was a need for the worker to interact with the public. (Tr. 447.) However, for the mail clerk, it would be less necessary to interact with the public. *Id.*

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire five-step process entails the following: First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. Second, the claimant must show that he suffers from a "severe impairment"

9

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when she became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Brown was insured on his alleged disability onset date, October 5, 2002 and remained insured until June 20, 2003.  (Tr. 12.)  Therefore, in order to be entitled to POD and DIB, Brown must establish a continuous twelve month period of disability commencing between October 5, 2002 and June 20, 2003.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits under the Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Brown established medically determinable, severe impairments, due to head/brain injury, degenerative lumbar disc/joint disease, depression, memory loss, and

---

in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

borderline intellectual functioning.  He found Brown was entitled to a closed period of disability between October 5, 2002 through October 5, 2003 – the minimum time required by law to receive benefits.  (Tr. 17.)  However, after October 6, 2003, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 due to medical improvement.  Brown is unable to perform his past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of light work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Brown is not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI.  Analysis

Brown claims the ALJ erred by improperly finding that he was no longer disabled due to medical improvement.  He asserts that the ALJ's decision was not supported by substantial

11

evidence and erroneously ignored both the treating physician and the ME's opinions.

*Medical Improvement*

"When an ALJ grants disability insurance benefits to an applicant for a closed period of disability, two decision-making processes occur....  First, the ALJ finds the applicant disabled and grants benefits.  Second, the ALJ engages in the termination decision-making process to find that the disability ended at some date prior to the hearing." *Joseph v. Astrue*, 231 Fed. Appx. 327, 329 (5th Cir. 2007) (internal citations omitted); *Shepherd v. Apfel*, 184 F.3d 1196, 1198 (10th Cir. 1999) (joining "the majority of other circuits in concluding that the medical improvement standard, as ... defined by 20 C.F.R. § 404.1594(b)(1), applies in 'closed period' cases"); *see also Ervin v. Sec'y of Dep't of Health & Human Services*, 852 F.2d 1287 (6th Cir. 1988) (remanding the matter for reconsideration under the medical improvement standards after the defendant conceded that such standards apply to closed periods of disability); *Love v. Comm'r of Soc. Sec.*, 2009 U.S. Dist. LEXIS 51348 (W.D. Mich. 2009) ("If a claimant is found to be disabled during this five-step process, the ALJ must determine whether the claimant's disability continues through the date of the decision or whether the claimant is instead only entitled to a closed period of disability.  This is accomplished by applying the medical improvement standard articulated at 20 C.F.R § 404.1594 (for DIB claims) and 20 C.F.R. § 416.994 (for SSI claims).")

Medical improvement is "any decrease in the medical severity of [the] impairment(s)" which were present at the point of comparison, as shown by improvements in symptoms, signs, and/or laboratory findings.  20 C.F.R. § 404.1594(b)(1); 404.994(b)(1)(i).  Under 20 C.F.R. § 404.1594(b)(4)(i), medical improvement can be demonstrated by a decrease in the severity of an impairment if: (1) it results in an increase in a claimant's functional capacity to perform basic

12

work activities; and, (2) the increased RFC allows a claimant to engage in substantial gainful activity. In other words, "[d]isability benefits may be terminated if there is substantial evidence demonstrating that: (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity." *Joseph*, 231 Fed. Appx. at 329. Also, the burden is on the Commissioner to demonstrate that a claimant's disability has ended. *Id*. (*citing Waters v. Barnhart*, 276 F.3d 716 (5th Cir. 2002)).

The ALJ found that Brown had demonstrated medical improvement as of October 6, 2003 and offered the following explanation:

**6. Medical improvement occurred as of October 6, 2003, the date the claimant's disability ended (20 C.F.R. 404.1594(b)(1) and 416.994(b)(1)(i)).**

The medical evidence revealed the claimant's mental health counseling case was closed on March 11, 2004 because of noncompliance (Exs.14F. 17F).

On October 20, 2005, the claimant visited Thomas Wagner, M.D., a primary care physician, and only complained of headaches in the back of his head. Dr. Wagner noted they were muscle tension headaches and prescribed the pain medication, Midrin (ex. 18F).

The most updated medical records revealed the claimant then complained of back problems. A physical examination performed on November 22, 2005 by Thomas Sonthosh, M.D., a spine surgeon, noted mild pain with extension, lateral bending to the right side, and with full flexion of the spine. The diagnoses were lumbar disc displacement and facet arthropathy degenerative disc disease. Dr. Sonthosh recommended physical therapy and prescribed the medication, Naprosyn. On February 20, 2006, the claimant informed Dr. Sonthosh that he was 100 percent improved with the medication. He could not attend physical therapy for transportation reasons. Dr. Sonthosh instructed the claimant to follow-up with his primary care physician (Ex. 20F).

In June 2006, the claimant reported that he had a seizure. He did not lose consciousness but had shaking. He was prescribed the medication, Neurontin

13

(Ex. 19F).

**7.  Beginning on October 6, 2003, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1549(f)(2) and 416.994(b)(5)(I)).**

In May 2003, the claimant sought mental health treatment for problems with his memory and anger.  His global assessment of functioning was rated at 55 (Ex. 14F).  By October 2003, it was noted the claimant was drinking quite heavily and smoked marijuana whenever it was available.

(Tr. 20).

Defendant argues that a finding of medical improvement since October 5, 2002 – the date Brown sustained a hematoma – is supported by the evidence.  (Doc. No. 19 at 17.)  Using this date, the record certainly reflects some improvement since the time of Brown's initial injury, at least with respect to his physical impairments.  However, "medical improvement," as defined in the regulations, requires more than ordinary improvement in a claimant's symptoms.  Medical improvement, in this context, requires a restoration of a claimant's ability to engage in substantial gainful activity.  Though the ALJ undoubtedly found that Brown no longer had an impairment or combination of impairments that met or equaled the listings, the basis for a finding of medical improvement on October 6, 2003 is less than clear.  The ALJ found that Brown met Listing 12.01, organic mental disorders, from October 5, 2002 until October 5, 2003.  (Tr. 18.)  Specifically, the ALJ noted Brown's medically documented memory problems and found that his problems resulted in marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace.  *Id*.  As such, Brown satisfied the A and B criteria of Listing 12.01.  When finding that Brown improved medically as of October 6, 2003, the ALJ cites three medical visits from 2005 and 2006 that are indicative of

improvement concerning Brown's *physical* impairments stemming from his back problems and/or headaches. (Tr. 20.) The Court fails to find how improvement in Brown's back pain is relevant or indicative of improvement with respect to his memory problems and the mental disorder listing. Without explaining its significance, the ALJ also noted that Brown had a seizure in June of 2006. *Id.* The ALJ never discussed why Brown no longer met Listing 12.02. As the burden was on the ALJ to demonstrate Brown no longer satisfied the aforementioned Listing, his failure to do so renders his finding untenable. His reliance on unrelated health issues to find medical improvement of Brown's organic mental disorder cannot be sustained. Moreover, neither the ALJ nor the Defendant has pointed to any evidence of record that illustrates medical improvement with respect to Brown's mental impairments as of October 6, 2003 – the very first day after the expiration of the minimum twelve month period necessary to receive benefits. Assuming *arguendo* that the record is capable of supporting a finding of medical improvement at some point in time, this date appears to have been chosen arbitrarily.

Finally, the ALJ also noted that Brown's mental health counseling case was closed for non-compliance and substance abuse on March 11, 2004 – five months after he found medical improvement. (Tr. 20.) The ALJ's opinion further noted that Brown was engaged in substance abuse as early as October of 2003. *Id.* While these facts may be relevant, the ALJ offered no explanation as to the significance of these facts to his finding of medical improvement. This Court cannot discern how the ALJ found improvement with respect to the organic mental disorder, what the significance of improvement in unrelated areas had on Brown's mental functioning, or how the termination of his counseling in March of 2004 is illustrative of medical improvement five months earlier on October 6, 2003. *See Sarchet v. Chater*, 78 F.3d 305, 307

15

(7th Cir. 1996) ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004).  Here, the evidence relied upon by the ALJ to find medical improvement was not the kind of evidence that a reasoning mind would accept as sufficient to support his conclusion.  Moreover, after reviewing the decision in its entirety, the ALJ's decision is devoid of any discussion where he explicitly concludes that Brown no longer meets listing 12.02.

A reversal and award of benefits is only appropriate if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbot v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990).  The Court does not find that the record as a whole precludes the possibility of a finding of medical improvement or, alternatively, a finding that Brown's disability ended on a date specific.  Nonetheless, the evidence relied upon by the ALJ was insufficient to support his conclusion that Brown's disability ended on October 6, 2003.  The ALJ's decision did not discuss whether Brown's organic mental disorder would have improved significantly enough with prescribed treatment to restore Brown's ability to engage in substantial gainful activity.  It did not expressly find that Brown failed to follow the prescribed treatment, nor did it discuss whether Brown had good cause for failing to follow treatment.  *See* 20 C.F.R. § 404.1594(e)(4).  Instead, it is clear the ALJ believed medical improvement had already occurred prior to his mental health counseling being terminated by the Nord Center.

Therefore, it is recommended that this matter be remanded for a new opinion that

adequately discusses whether Brown's impairments, especially his organic mental disorder, improved significantly enough to justify a finding of medical improvement.  If the ALJ, in the alternative, determines that an applicable exception negates the need to make a finding of medical improvement, the opinion should thoroughly discuss the requisite facts involved in making such a determination.  Furthermore, at the discretion of the ALJ, a new hearing may be held if it is deemed necessary to supplement the existing record.

## VII.  Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner not supported by substantial evidence.  Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED for further proceedings consistent with this Report and Recommendation.

s/ Greg White
U.S. Magistrate Judge

Date: August 18, 2009

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**